# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| KADIJA A. IMRAN, | ) | No. CV 14-1943-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## I.

## PROCEEDINGS

Plaintiff filed this action on December 5, 2014, seeking review of the Commissioner's denial of her applications for Supplemental Security Income ("SSI") payments and disabled widow's benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 31, 2014, and February 15, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 18, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

## II.

## BACKGROUND

Plaintiff was born on May 15, 1960.  [Administrative Record ("AR") at 23, 453.]  She has no past relevant work experience.  [AR at 23, 89, 182.]

On September 30, 2009, plaintiff filed an application for SSI payments, alleging that she has been unable to work since April 1, 2002.  [AR at 175, 453.]  After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 175, 209-10.]  Hearings were held on February 5, 2011, and June 28, 2011, at which time plaintiff appeared represented by an attorney, and testified on her own behalf, with the assistance of a Somali interpreter at the second hearing.  [AR at 45-52, 53-74.]  A medical expert ("ME") and vocational expert ("VE") also testified at the second hearing.  [AR at 56-61, 70-74.]  On August 4, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability since September 30, 2009, the date the application was filed.  [AR at 175-84.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 304.]  On October 7, 2011, the Appeals Council granted the request for review, vacated the hearing decision, and remanded the matter to the ALJ for resolution of various issues including plaintiff's credibility; an adequate evaluation of the statements of plaintiff's son; an adequate evaluation of the opinion of the consultative examiner, Lorna Carlin, M.D.; and an adequate evaluation of the report of treating physician J. Orinu, M.D., although "records suggest that [plaintiff] might have seen [him] for a one-time evaluation."  [AR at 191-93.]  The Appeals Council ordered the ALJ to obtain additional evidence concerning plaintiff's impairments; further evaluate her subjective complaints; further evaluate her mental impairments; give further consideration to her maximum residual functional capacity ("RFC") during the entire period at issue; and obtain evidence from a VE to clarify the effect of the assessed limitations on plaintiff's occupational base.  [Id.; see also AR at 11.]  On March 16, 2012, plaintiff filed a disabled widow's claim, based on the January 10, 2012, death of her spouse.  [AR at 78.]  On May 7, 2013, a hearing was held, at which time plaintiff appeared represented by an attorney, and testified on her own behalf.  [AR at 77-100.]  An ME and a VE also testified.  [AR at 78-79, 86-87, 88-93.]  Plaintiff declined the services of an

interpreter.  [AR at 80.]  On May 31, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from April 1, 2002, through the date of the decision.  [AR at 11-25.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 6-7.]  When the Appeals Council denied plaintiff's request for review on October 10, 2014 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

3

IV.

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful

4

1  work available in the national economy.  Id.  The determination of this issue comprises the fifth

2  and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at

3  828 n.5; Drouin, 966 F.2d at 1257.

4

5  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

6         At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

7  April 1, 2002, the alleged onset date.[1]  [AR at 14.]  At step two, the ALJ concluded that plaintiff has

8  the following severe impairments:

9         [H]ypertension; diabetes mellitus; degenerative joint disease of the left shoulder;
         degenerative joint disease of the left knee; degenerative disc disease of the cervical
10        and lumbar spines; obesity; pseudodementia; and depressive disorder.

11  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination

12  of impairments that meets or medically equals any of the impairments in the Listings.  [Id.]  The

13  ALJ further found that plaintiff retained the RFC[2] to perform a reduced range of light work,[3] as

14  follows:

15  _____

16  [1]   To be eligible for disabled widow's insurance benefits, the claimant must be the widow
of the deceased worker, have attained the age of 50, be unmarried, and have a disability that

17  began before the end of the prescribed period.  [AR at 12 (citing 20 C.F.R. § 404.335).]  The
prescribed period ends with the month before the month in which the claimant attains age 60,

18  or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled
to survivor's benefits, whichever is later.  [AR at 12-13 (citing 20 C.F.R. § 404.335).]  The ALJ

19  noted that plaintiff meets the non-disability requirements for disabled widow's benefits, and that
the prescribed period ends on January 31, 2019.  [AR at 14.]

20

21  [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps

22  three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,

23  1151 n.2 (9th Cir. 2007) (citation omitted).

24  [3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in

25  this category when it requires a good deal of walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg controls. To be considered capable of

26  performing a full or wide range of light work, you must have the ability to do substantially all of
these activities. If someone can do light work, we determine that he or she can also do sedentary

27  work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b).

28

5

[S]it for six hours and stand or walk for four hours, with normal work day breaks, in an eight-hour work day; lift or carry twenty pounds occasionally and ten pounds frequently; occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl; never climb ladders, ropes, or scaffolds; occasionally reach overhead with the left upper extremity; never work at unprotected heights; can perform moderately complex tasks, of up to three to four step instructions; should not perform jobs requiring hypervigilance; should not be in charge of the safety operations of others; should not have high production quotas or perform rapid assembly line work; and should be in a habituated work setting.

[AR at 16-17.]  At step four, the ALJ concluded that plaintiff has no past relevant work.  [AR at 23.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "cashier II" (Dictionary of Occupational Titles ("DOT") No. 211.462-010), and "information clerk, motor transportation" (DOT No. 237.367-018).  [AR at 24, 91.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from April 1, 2002, the alleged onset date, through May 31, 2013, the date of the decision.  [AR at 25.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she:  (1) found plaintiff capable of performing the work identified at step five; (2) found that Listing 12.05(C) was not satisfied; and (3) evaluated the medical source opinion of Paul Balson, M.D., a State agency physician.  [Joint Stipulation ("JS") at 4.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.    STEP FIVE WORK**

Plaintiff contends that the ALJ erred at step five of her analysis.  [JS at 5-9, 15-16.] Specifically, she argues that her RFC limitation to occasional overhead reaching with her left arm, and her ability to perform moderately complex tasks of up to three- and four-step instructions, preclude her from performing the cashier II and information clerk jobs identified by the VE, which require frequent overhead reaching, and a mental capacity of reasoning levels three and four,

respectively.[4]  [Id.]

### 1.    Overhead Reaching

Plaintiff's RFC limits her to occasional overhead reaching with her left upper extremity, and the ALJ's hypothetical to the VE included this limitation.  [AR at 17, 89.]  Plaintiff observes that the DOT describes the positions of cashier II and information clerk as requiring frequent reaching.  DOT Nos. 211.462-010, 237.367-018.  Reaching is described as "extending the *hands* and *arms* in any direction."  Soc. Sec. Ruling ("SSR")[5] 85-15 (emphasis added).  Because the DOT does not distinguish between overhead reaching and any other kind of reaching, or between right and left hand reaching, plaintiff argues that the reaching requirement for these positions exceeds her functional limitations and, because the ALJ failed to identify and obtain a reasonable explanation from the VE regarding this deviation from the DOT, reversal is warranted.  [JS at 8 (citing Massachi, 486 F.3d at 1154).]

Defendant contends that although reaching is defined as extending the hands and arms in any direction, "it is well accepted that the DOT does not require reaching be done with both hands" and, therefore, there is no potential conflict between plaintiff's RFC and the DOT.  [JS at 9 (citing Salcido v. Astrue, 2012 WL 2160346, at *4 (C.D. Cal. June 13, 2012)).]  Defendant also argues that "presumably, occasional overhead reaching with the left arm results in a smaller

---

[4]    A reasoning level 3 occupation means that an individual must be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  DOT No. 211.462-010 (cashier II).  Reasoning level 4 requires the individual to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists.  Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form."  DOT No. 237.367-018 (information clerk, motor transportation).

[5]    "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the [Social Security Administration].  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1   subset of the frequent reaching contemplated by the DOT," and plaintiff's unlimited ability to reach

2   in any direction with her right arm is sufficient to support the VE's testimony and the ALJ's finding

3   that plaintiff can perform the jobs as generally performed.  [JS at 10.]  Defendant further argues

4   that a review of the narrative description for the jobs "shows little if any tasks that might require

5   overhead reaching."[6]  [Id. (citations omitted).]

6          In determining whether appropriate jobs exist for a claimant, the VE generally will refer to

7   the DOT.  Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  SSR 00-4p explicitly

8   requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether

9   there is a reasonable explanation for any deviation.  See SSR 00-4p (stating that an ALJ must

10  inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with

11  the DOT).  At the hearing, the ALJ did not ask whether the VE's opinions were consistent with the

12  DOT, and, if so, whether there was a reasonable explanation for the conflict.  [See generally AR

13  at 88-93.)  The procedural requirements of SSR 00-4p ensure that the record is clear as to why

14  an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with

15  the DOT.  In making disability determinations, the ALJ may rely on VE testimony that contradicts

16  the DOT, but only insofar as the record contains persuasive evidence to support the deviation.

17  Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486

18  F.3d at 1153.  Although evidence provided by a VE "generally should be consistent" with the DOT,

19  "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR

20  00-4p.  Thus, the ALJ must first determine whether a conflict exists, and if it does, she must then

21  determine whether the VE's explanation for the conflict is reasonable and whether a basis exists

22  for relying on the expert rather than the DOT.  Id.

23         Only after determining whether the VE has deviated from the DOT, and whether any

24  _____

25  [6]   While this argument has some logical surface appeal, the plain meaning of "reaching" is
    not indeterminate and includes extending hands and arms in any direction, including overhead
26  reaching.  Thus, the VE's testimony implies that plaintiff was capable of performing jobs that
    require frequent reaching in all directions, including overhead and, under the circumstances
27  herein, the Court cannot confidently conclude that the ALJ's failure to determine whether the VE's
    testimony was consistent with the DOT and/or to provide an explanation for any deviation was
28  harmless error.

deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context). Unless the VE's testimony actually conflicts with the DOT, by itself the ALJ's failure to explicitly ask whether the VE's testimony was consistent with the DOT is not enough to warrant reversal. Massachi, 486 F.3d at 1151 n. 19, 1152-53 (failure to ask whether the VE's testimony is consistent with the DOT is harmless procedural error where there is no actual conflict, or the VE has provided sufficient support for his conclusion so as to justify any potential conflicts).

Here, the jobs identified by the VE are defined by the DOT as requiring "frequent" reaching. This conflicts with plaintiff's limitation to only occasional overhead reaching with her left upper extremity, in part *because* "overhead reaching is a specific subset of reaching." See Carpenter v. Colvin, 2014 WL 4795037, at *8 (E.D. Cal. Sept. 25, 2014); see also Kemp ex rel. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014). At a minimum, therefore, there is a *potential* conflict between the VE's testimony about jobs plaintiff could perform and the DOT description of those jobs, and an explanation of that deviation is necessary. Carpenter, 2014 WL 4795037, at *8 (testimony that a claimant limited to occasional overhead reaching can nonetheless perform frequent reaching is the type of deviation that should be resolved by explanation from the VE) (citing Winder v. Astrue, 2013 WL 489611, at *2 (C.D. Cal. Feb. 6, 2013) (same)); Richardson v. Astrue, 2012 WL 1425130, at *4 (C.D. Cal. Apr. 25, 2012) (reaching in "any" direction plainly encompasses overhead reaching, therefore VE's testimony deviated from DOT and the ALJ was required to obtain "persuasive evidence" to explain the deviation); Samsaguan v. Colvin, 2014 WL 218419 (C.D. Cal. Jan. 21, 2014) (reaching is defined as "extending the hands and arms in *any* direction," and it is apparent that the DOT job requirements for frequent reaching conflict with a

limitation of occasional reaching above the shoulder); see also Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) (remanding to ALJ where claimant was limited to occasional reaching above the shoulder whereas the job identified by the VE required frequent reaching under the DOT, stating, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help.").

Additionally, like the DOT itself, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), a companion publication to the DOT, defines reaching as "[e]xtending *hand(s)* and *arm(s)* in any direction." SCO, app. C (emphasis added). And, even if "the use of two arms is not *necessarily* required for jobs that require reaching and handling" (see Salcido, 2012 WL 2160346, at *4 (emphasis added) (citations omitted)), where, as here, the VE did not specifically confirm that his testimony did not conflict with the DOT requirements for these positions, the Court declines to determine whether the DOT jobs at issue require frequent overhead reaching with both arms. See Zavalin v. Colvin, 778 F.3d 842, 848 (9th Cir. 2015) (citation omitted) (the court is constrained to review the reasons asserted by the ALJ and cannot affirm the decision on a ground that the agency did not invoke in making its decision). The ALJ, however, specifically determined, without explanation for the overhead reaching conflict, that, "other than the erosion of available cashier II jobs [based on a sit/stand limitation],[7] the [VE's] testimony is consistent with the information contained in the [DOT.]" [AR at 25.]

Absent a determination that the VE's explanation for the conflict was reasonable and a basis exists for relying on the VE's conclusions rather than on the DOT, an ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54; SSR 00-4p. Here, the ALJ relied on VE testimony that conflicted with the DOT, and the ALJ was therefore required to explain the deviation by making either specific factual findings or drawing inferences from the context of the VE's testimony. See Light, 119 F.3d at 793.

---

[7]    The VE specifically testified that he eroded the number of available positions only for the cashier II occupation because the majority of those positions "don't allow for alternating" positions. [AR at 91.]

1   She did not do so.  Instead, the record contains only the VE's conclusion that plaintiff can perform

2   work requiring "frequent reaching" despite an RFC limiting her to occasional overhead reaching

3   with the left upper extremity, and the ALJ's unsupported determination that the VE's testimony did

4   not conflict with the DOT despite this job requirement and a limitation to occasional overhead

5   reaching with the left upper extremity.  "Where an ALJ fails to obtain an explanation for and

6   resolve an apparent conflict -- even where the VE did not identify the conflict -- the ALJ errs."

7   Richardson, 2012 WL 1425130, at * 5.  Remand is required to obtain further VE testimony to

8   resolve the inconsistency with the DOT.  Massachi, 486 F.3d at 1155.

9

10          **2.      Reasoning Level Three**

11          Plaintiff appears to argue that her RFC limitation to performing moderately complex tasks,

12   of up to three- to four-step instructions, is inconsistent with the occupation of cashier II, which has

13   a reasoning level of three, and with the occupation of information clerk, which has a reasoning

14   level of four.  [JS at 5 (citations omitted); see also supra note 4.]  She argues that where there is

15   an apparent conflict between an individual's limitation to simple, routine, or repetitive tasks, and

16   the demands of level three reasoning, the ALJ must ask the VE for an explanation regarding the

17   inconsistency.  [JS at 5-6 (citations omitted).]  She then goes on to cite cases that she contends

18   stand for the propositions that a limitation to two-step instructions corresponds to a reasoning level

19   of one, and that "three and four-step instructions [are] consistent with Reasoning Level 2 jobs."

20   [JS at 6 (citing Burns v. Astrue, 2010 WL 4795562, at *8 (C.D. Cal. Nov. 18, 2010).]  Plaintiff's

21   arguments are unpersuasive.

22          Preliminarily, plaintiff's RFC limited her to moderately complex tasks, not to simple, routine,

23   or repetitive tasks.  Courts in the Ninth Circuit have generally found that a limitation to *simple,*

24   *repetitive work* is consistent with reasoning levels 1 and 2 (see, e.g., Kim v. Colvin, 2013 WL

25   6670335, at *8 (C.D. Cal. Dec. 18, 2013); Hite v. Colvin, 2014 WL 1364922, at *4 n.3 (C.D. Cal.

26   Apr. 7, 2014) (citing Carney v. Astrue, 2010 WL 4060488 at *4 (C.D. Cal. Dec. 6, 2010) (citations

27   omitted)); Funches v. Astrue, 2011 WL 1497068, at *5 (E.D. Cal. Apr. 19, 2011) (citing Tudino v.

28   Barnhart, 2008 WL 4161443, at *11 (S.D. Cal. Sept. 5, 2008) (level 2 reasoning "appears to be

the breaking point for those individuals limited to performing simple repetitive tasks")).  Thus, there was no apparent conflict between plaintiff's limitation to moderately complex tasks and the demands of level three and level four reasoning occupations as there might have been had she been limited to simple, routine, or repetitive tasks.

Additionally, to the extent that plaintiff contends that a limitation to three- and four-step instructions is *only* consistent with level two reasoning, her argument lacks merit.  [See JS at 6 (citing Burns, 2010 WL 4795562, at *8).]  The plaintiff in Burns was found able to understand, carry out, and remember three- and four-step job instructions, but would have difficulty with detailed and complex job instructions and was limited, therefore, to "short, repetitive tasks."  Burns 2010 WL 4795562, at *4.  Burns did not hold that an individual with an RFC for *moderately complex tasks* and the ability to understand, remember, and carry out three- to four-step instructions was limited to occupations at reasoning level 2 -- it held only that Burns' ability to understand, remember, and carry out three- and four-step instructions did not mean that she could perform reasoning level 3 jobs, in light of her additional limitation to short, repetitive tasks, which was consistent with no more than reasoning level 2.  Id. at *8.  Plaintiff cites to no persuasive authority to support her contention that an RFC for moderately complex tasks and ability to understand, remember, and carry out three- and four-step instructions is inconsistent with reasoning level 3 and/or 4 occupations.  See  Zavalin, 778 F.3d at 847 (holding that there is an apparent conflict between an RFC to perform simple, repetitive tasks, and the demands of level 3 reasoning); see Santos v. Colvin, 2014 WL 1794462, at *6 (C.D. Cal. May 6, 2014) (opinion of ME that plaintiff could perform moderately complex tasks with 5-step instructions was inconsistent with any contention that plaintiff cannot perform reasoning level 3 jobs).

Based on the foregoing, there was no actual or potential conflict as to this issue and the ALJ's failure to specifically ask the VE whether his testimony was consistent with the DOT as it related to any conflict between the two job positions' reasoning levels and plaintiff's RFC, was harmless error.

/

/

**B.     LISTING 12.05(C)**

Listing 12.05C provides as follows:

*Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.  [¶] The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

        C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff contends that she qualifies for benefits because she meets all three prongs of Listing 12.05(C) in that she has a valid full scale IQ score of 69; she has numerous other medically determinable severe impairments; and she has significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22 as evidenced by her IQ score of 69, which creates a rebuttable presumption that she had sub-average intellectual functioning with adaptive deficits prior to age 22.  [AR at 16-27.]

The ALJ generally discussed plaintiff's consultative psychological examinations, which purported to measure plaintiff's IQ.  First, in April 2010, Charlene Krieg, Ph.D., performed a psychological consultative examination in which she reported plaintiff's "disinterest in the tasks at hand," minimal cooperation, and the appearance that plaintiff was not "putting forth her best effort." [AR at 20 (citing AR at 1118-24).]  After administering the Wechsler Adult Intelligence Scale, Dr. Krieg noted that plaintiff's full scale IQ of 46 put her in the mild mental retardation range.  [AR at 1121.]  However, Dr. Krieg also indicated that due to plaintiff's lack of effort, "the test results may not be valid."  [Id.]  Dr. Krieg also noted that plaintiff reported she could perform self-care activities, handle her own money, and had a valid driver's license.  [AR at 1120.]  Dr. Krieg stated that if the test results were not valid, then plaintiff could perform detailed and complex tasks.  [AR at 1122.]  Joseph Malancharuvil, M.D., the ME, also questioned the IQ test results, deeming them to be "spuriously low."  [AR at 83.]

In May 2012, a consultative psychological examination was performed by Kara Cross, Ph.D.  [AR at 2199-2210.]  Dr. Cross found plaintiff's full scale IQ score to be 69.  [AR at 2202.]

She reported that plaintiff could bathe and dress herself, perform simple household chores, shop, and cook.  [AR at 2201.]  She opined that plaintiff had mild depression and that her borderline intellectual functioning was probably influenced by the fact that plaintiff was functionally illiterate and had never had an education.  [AR at 2204.]  The ALJ discounted Dr. Cross' opinion, noting that it was based on "false assumptions" because the record indicated plaintiff had some type of schooling, and could speak and understand English.  [AR at 21, 22.]  She also noted that plaintiff's statements regarding her education ranged from never attending school to being a high school graduate.  [AR at 22 (see also AR at 279 (attended school until the fourth or fifth grade); 658 (does not remember highest grade of school completed); 764 (attended school to the sixth grade); 989 (had very little schooling in Ethiopia, but went to school in the United States and became a U.S. citizen after passing a test); 1119 (did not attend school in Ethiopia, but had some education in the U.S. to learn English); 1131 (high school graduate); 1156 (attended school to the fifth grade); 2200 (never attended school).]  Additionally, plaintiff could speak and understand English, and was able to read English "before 'she got sick and forgot.'"  [AR at 21 (citing AR at 1118; see also AR at 47, 49, 652).]  Although plaintiff told Dr. Cross that she did not receive any mental health treatment, she told Dr. Krieg she had been in therapy for a long time, and there was some evidence to show she had seen Dr. Sfera and Dr. Orinu at least twice in 2010.  [AR at 19, 20, 21 (see also AR at 1119, 1130-35, 2200).]  Based on the foregoing, the ALJ found that Dr. Cross' assumptions, which the ALJ deemed to be false, cast doubt on the validity of plaintiff's IQ test results and on Dr. Cross' opinions regarding plaintiff's mental capabilities.

The ME concluded that the disparity in plaintiff's two IQ scores -- 46 and 69 -- suggested that plaintiff varies her performance depending on the day.  [AR at 21, 83.]  He also noted that neither IQ score is consistent with plaintiff's previous functioning and her overall presentation.  [AR at 83.]  Additionally, he stated that because of the disparity in scores he would not trust plaintiff's intellectual performance as tested, and that it appeared that in 2010 she was "deliberately lowering the score."  [Id.]  He also testified that an individual can always lower her IQ but cannot raise it. [Id.]

Plaintiff contends that any false representations to Dr. Cross had no bearing on the

14

objective IQ test score of 69 because there is no evidence that Dr. Cross "factored those statements when she scored the IQ test." [JS at 33.]  While the record supports the ALJ's finding that Dr. Krieg's IQ score was not valid, the decision is unclear as to how Dr. Cross' "false assumptions" concerning plaintiff's educational history and English abilities impacted the validity of the IQ score itself.  Accordingly, on remand the ALJ shall consider the validity of Dr. Cross' test score and whether plaintiff meets the requirements of Listing 12.05(C).[8]

## C.    EVALUATION OF MEDICAL SOURCE OPINION

Plaintiff contends that the ALJ failed to properly consider the opinions of the State agency reviewing physician, Dr. Balson. [JS at 34-36; AR at 1136-53.]  Specifically, on March 12, 2003, Dr. Balson found that due to her depression, plaintiff was moderately to markedly limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting. [AR at 1151-52.]  Plaintiff claims it was error for the ALJ not to mention Dr. Balson's opinions, as they further erode plaintiff's RFC, and the ALJ must explain why "significant probative evidence has been rejected." [JS at 35-36 (citations omitted).]  She also argues that her application for SSI was filed on October 1, 2009, and alleged disability commencing on April 1, 2002, and that Dr. Balson's opinions are probative as they fall within the relevant time period.  [JS at 36.]

Plaintiff's argument is unpersuasive.  Although she alleged disability beginning in 2002, her review period for purposes of her application for SSI began in September 2009 (one month prior to her application), and for widow's benefits in March 2012.  Thus, this 2003 evidence is not directly probative of this application period.  Even if it were, Dr. Balson's report was remote in time

---

[8]    The ALJ did determine that plaintiff's mental impairments did not meet or medically equal Listing 12.02 (organic mental disorders) and Listing 12.04 (affective disorders), neither of which require a valid IQ score.

15

and he did not have access to plaintiff's later records.  Moreover, even if the ALJ erred in failing to discuss Dr. Balson's report, any error was harmless because the ALJ considered and properly discounted the opinions of other doctors -- including Dr. Cross, Dr. Carlin, Dr. Sfera, Dr. Orinu, and Dr. Logue, whose opinions were similar to Dr. Balson's opinions -- based at least in part on the ALJ's valid concerns about plaintiff's effort and credibility as reflected in the various reports and examinations.  [See AR at 17-23 (citations omitted).]

Remand is not warranted on this issue.


## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, the ALJ must determine whether the jobs identified by the VE are consistent with the definitions in the DOT and plaintiff's RFC limitation to occasional overhead reaching with her left upper extremity.  Second, the ALJ must also determine whether there is a reasonable explanation for any inconsistency between the VE's testimony and the DOT as it relates to plaintiff's left upper extremity overhead reaching limitation.  Third, the ALJ shall consider the validity of Dr. Cross' test score and whether plaintiff meets the requirements of Listing 12.05(C).  Finally, if warranted, the ALJ shall determine, at step five, with the assistance of a VE if necessary,

whether there are jobs existing in significant numbers in the national economy that plaintiff can perform.

### VII.

### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  September 25, 2015

                         PAUL L. ABRAMS
            UNITED STATES MAGISTRATE JUDGE